**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00018-CV**

_____

**D.R. HORTON-TEXAS, LTD. AND D.R. HORTON, INC., Appellants**

**V.**

**DAVID HERNANDEZ AND LAUREN HERNANDEZ, Appellees**

---

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 20-09-11354-CV**

---

**MEMORANDUM OPINION**

This is an accelerated appeal from the trial court's order denying arbitration. Appellees David and Lauren Hernandez (referred to collectively as "the Hernandezes") are subsequent purchasers of a home built by appellants D.R. Horton-Texas, Ltd., and D.R. Horton, Inc. (referred to collectively as "DRH"). The Hernandezes sued DRH, alleging the home was defectively constructed. DRH filed a plea in abatement and moved to compel arbitration under a sales contract with the original buyer. The trial court denied DRH's motion to compel arbitration. In two

1

issues, DRH argues that the trial court erred by denying its motion to compel arbitration because (1) although the Hernandezes are non-signatories to the original sales contract, as subsequent purchasers of the home, they are subject to the arbitration provision in the sales contract under the theory of direct benefits estoppel, and (2) the Hernandezes failed to establish any defense to arbitration. We affirm the trial court's order denying DRH's motion to compel arbitration.

## BACKGROUND

In 2012, Emily Hudnall and DRH entered into a Contract of Sale ("the Hudnall-DRH Contract") in which Hudnall agreed to purchase a home to be built by DRH. The Hudnall-DRH Contract specifically identified the "Seller" as D.R. Horton-Texas, Ltd., and the "Buyer" as Hudnall. The contract contained an arbitration clause, providing:

> 16. ARBITRATION CLAUSE. BUYER AND SELLER AGREE THAT ANY CLAIM, CONTROVERSY OR DISPUTE OF ANY KIND BETWEEN BUYER AND SELLER, WHETHER ARISING FROM A TORT, THE CONTRACT, ANY BREACH OF THE CONTRACT IN ANY WAY RELATED TO THIS TRANSACTION, INCLUDING BUT NOT LIMITED TO CLAIMS OR DISPUTES ARISING UNDER THE DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT, TEXAS BUSINESS & COMMERICE CODE SECTION 17.41 ET SEQ., TEXAS PROPERTY CODE CHAPTER 27, AND/OR THE TERMS OF THE EXPRESS LIMITED WARRANTY REFERENCED IN PARAGRAPH 15 OF THE CONTRACT, SHALL BE RESOLVED BY BINDING ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION ACT AND THE FEDERAL ARBITRATION ACT UNDER THE DIRECTION AND PROCEDURES ESTABLISHED BY THE AAA "CONSTRUCTION INDUSTRY ARBITRATION

2

RULES" EXCEPT AS SPECIFICALLY MODIFIED HEREIN OR DICTATED BY APPLICABLE STATUTES INCLUDING THE TEXAS GENERAL ARBITRATION ACT AND/OR THE FEDERAL ARBITRATION ACT... .

The Hudnall-DRH Contract set forth that Hudnall was provided with a Sample Limited Warranty administered by Residential Warranty Corporation ("RWC"). The record shows that RWC is the administrator of the ten-year warranty that DRH referenced in the Hudnall-DRH Contract. More specifically, the Hudnall-DRH contract set forth that:

15. BUYER HAD BEEN PROVIDED A SAMPLE LIMITED WARRANTY AND HAS READ AND UNDERSTANDS THE MEMBER'S WARRANTY ADMINISTERED BY RESIDENTIAL WARRANTY CORPORATION ("RWC"), INCLUDING THE PROVISION THAT REQUIRES ALL DISPUTES THAT ARISE UNDER THE LIMITED WARRANTY TO BE SUBMITTED TO BINDING ARBITRATION. VALIDATION OF THE RWC LIMITED WARRANTY IS NOT GUARANTEED, BUT IS CONDITIONED ON THE SATISFACTORY COMPLETION OF ALL REQUIRED INSPECTIONS, UPON MEMBER'S COMPLIANCE WITH ALL OF RWC'S ENROLLMENT PROCEDURES, AND UPON MEMBER REMAINING A MEMBER IN GOOD STANDING OF THE LIMITED WARRANTY PROGRAM. BUYER UNDERSTANDS AND AGREES THAT, IF THE ABOVE WARRANTY IS VALIDATED, IT IS PROVIDED BY SELLER IN LIEU OF ALL OTHER WARRANTIES, ORAL AGREEMENTS, OR REPRESENTATIONS, AND SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO QUALITY, FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, ABILITY OR OTHERWISE, EXCEPT AS IS EXPRESSLY SET FORTH IN THE TEN-YEAR LIMITED WARRANTY PROGRAM... .

In 2014, Hudnall sold the home to the Hernandezes. In September 2020, the Hernandezes filed suit against DRH, alleging claims that were based on their status

3

as subsequent purchasers of the home who were covered by DRH's ten-year construction warranty (referred to as the "RWC Limited Warranty"). The Hernandezes alleged causes of action for violations of the Deceptive Trade Practices Act ("DTPA"), fraudulent inducement, fraud by nondisclosure, breach of warranty, negligence, and conspiracy; however, the Hernandezes did not pursue a cause of action for breach of contract under the Hudnall-DRH Contract. In their third amended petition, the Hernandezes alleged that the source of their express warranty and misrepresentation claims under the DTPA was the RWC Limited Warranty. The Hernandezes' claims for fraudulent inducement, fraud by nondisclosure, breach of warranty, negligence, and conspiracy also rely on the express warranty provided in DRH's Warranty Booklet and on implied warranties provided by Texas law, including warranties of good workmanship and habitability. The Hernandezes alleged that in 2017, DRH reimbursed them for mold remediation and paid to remove faulty air ducts and to install new ones. The Hernandezes further alleged that they filed suit in 2019, when they found mold in the same location, and mold inspectors determined that the mold was caused by inherent construction defects.

In December 2020, DRH moved to abate and compel arbitration. According to DRH, as subsequent purchasers who have alleged various construction defects associated with the property, the Hernandezes are obligated to arbitrate their claims under the doctrine of direct benefits estoppel because their factual allegations and

4

causes of action are predicated on the existence of the Hudnall-DRH Contract. It should be noted that the only Exhibits filed with DRH's Motion to Abate and Compel Arbitration were Exhibit A – the business records affidavit of Holly James with 21 pages including Exhibit A-1 – the original Contract of Sale (the Hudnall-DRH Contract); Exhibit B – the General Warranty Deed between DRH as the Grantor and Hudnall as the Grantee; and Exhibit C – the Warranty Deed with Vendor's Lien with Hudnall as the Grantor and the Hernandezes as the Grantee. More importantly, DRH failed to produce the DRH Sample Limited Warranty, DRH's ten-year construction warranty, DRH's Warranty Booklet, the RWC Limited Warranty, the Addendum to the RWC Limited Warranty, or similar DRH warranty for the trial court's consideration. Based upon on our review, the record does not include any applicable warranty documents that were or could be relied upon by DRH.

The Hernandezes filed an objection to DRH's motion to compel, arguing that there is no valid contractual obligation that would compel arbitration, because as subsequent purchasers, they are not bound by the arbitration clause in the Hudnall-DRH Contract. According to the Hernandezes, the arbitration clause in the Hudnall-DRH Contract only covers any claim, controversy, or dispute between the "Buyer" and "Seller," which the contract specifically identifies as D.R. Horton-Texas, Ltd. and Hudnall. The Hernandezes also argued that if the trial court found that they are

5

bound to arbitration as subsequent purchasers, the trial court should deny DRH's motion to compel due to the Hernandezes' inability to afford arbitration. The Hernandezes attached the following exhibits to their objection to the motion to compel: a copy of the American Arbitration Association's ("AAA") Construction Industry Arbitration Fee Schedule; Sample Arbiter Fees; the Texas Residential Construction Commission Addendum to the Limited Warranty; the Declaration of David Hernandez; and the Declaration of their attorney, Lawrence Chang. DRH objected to the Hernandezes' exhibits, and the Hernandezes filed a response and additional exhibits, including a second Declaration by Chang. In a supplemental reply to the Hernandezes' objections to its motion to compel, DRH proposed that the parties agree to an ad hoc arbitration of the dispute to reduce the cost of arbitration. It should be noted that the Texas Residential Construction Commission Addendum to the Limited Warranty referenced above was produced by the Hernandezes as Exhibit 3, which is administered by RWC and entitled: "Residential Warranty Corporation presents The TRCC Addendum to the Limited Warranty 10 Year Warranty for New Homes." More importantly, this TRCC Addendum to the Limited Warranty was the only warranty produced in the entire record for the trial court's consideration.

The trial court conducted a hearing on DRH's motion to compel. David Hernandez testified that he had a contingency contract with Lawrence Chang to

6

litigate the case, and Chang would not arbitrate the case without a fee. According to David, he could not find any attorneys who would take an arbitration on a contingency. David testified that he understood that DRH did not want AAA to administer the arbitration, and he testified that he had $750 to pay the fee to get an arbitrator. David explained that he could not afford the cost of filing fees, daily arbitration, expert witnesses, or depositions, and Chang was unwilling to pay the arbitration expenses. David also explained that he had approximately $6000 in savings, but he paid $1800 for his daughter's school tuition.

David testified that before purchasing the home, he reviewed the warranty booklet on DRH's website, and David agreed that the booklet included an arbitration clause. David testified that he never located the warranty booklet that applied to his home, and David explained that the warranty booklet that Chang presented to the trial court contained an arbitration clause and appeared to be the same booklet that he reviewed on DRH's website. Chang argued that the warranty booklet that he provided as Exhibit 3 is a substantially similar warranty and the purpose of submitting the sample warranty was to show that it included subsequent purchasers. Chang further argued that DRH is the only party who has access to the warranty booklet that was in effect when the Hernandezes purchased the home, but DRH failed to provide the applicable warranty booklet. According to Chang, DRH objected to David's Exhibit 3 as the sample warranty agreement with RWC, but it is

7

the only evidence produced regarding a warranty. More importantly, if Exhibit 3 is the sample warranty that applies to the Hernandezes, it only requires the Hernandezes to arbitrate with RWC and not DRH. However, we note that in the Declaration of David Hernandez Under CPRC § 132.001, David averred that Exhibit 3 (the TRCC Addendum to the Limited Warranty) looked like the DRH ten-year warranty found online. Likewise, in the Declaration of Lawrence Chang Under CPRC § 132.001 and in the January 14, 2021, Declaration of Lawrence Chang Under CPRC § 132.001, Chang averred that Exhibit 3 (the TRCC Addendum to the Limited Warranty) was downloaded by him personally from DRH's website. Again, this TRCC Addendum to the Limited Warranty was the only warranty produced in the entire record for the trial court's consideration.

During the hearing, the Hernandezes argued that there is no evidence of a valid enforceable arbitration clause in the Hudnall-DRH Contract, because the definition of the term "Buyer" in the contract does not include subsequent purchasers. The Hernandezes also argued that DRH failed to present evidence of a valid arbitration clause in the RWC Limited Warranty by not presenting the applicable limited warranty, and the arbitration clause in the Addendum to the RWC Limited Warranty that DRH provided includes an agreement for subsequent purchasers to arbitrate with RWC and not DRH. Additionally, Chang argued that the evidence showed the Hernandezes could not afford arbitration, the cost of arbitration

8

is prohibitively inexpensive to the point of being unjust, DRH's offer to pay AAA $750 for an arbiter does not comply with the arbitration clause DRH is trying to enforce, and DRH has provided no evidence of the cost of potential arbiters. DRH maintained that the strongest arbitration provision to compel arbitration is in the Hudnall-DRH Contract, which referenced that the Buyer (Hudnall) was provided a Sample Limited Warranty and stated that all warranty disputes are to be submitted to binding arbitration; however, DRH never produced a warranty document supporting its position. The trial court denied DRH's motion to abate and compel arbitration. In addition, it should be noted that no findings of fact or conclusions of law were requested or filed.

## ANALYSIS

In two issues, DRH argues that the trial court erred by denying its motion to compel and motion to abate because (1) the doctrine of direct benefits estoppel requires the Hernandezes to arbitrate all their claims against DRH, and (2) the Hernandezes failed to establish any defense to arbitration.

We review a trial court's ruling on a motion to compel arbitration for an abuse of discretion. *See Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642-43 (Tex. 2009). We defer to a trial court's factual findings, and we review the trial court's legal determinations de novo, including questions of contract interpretation, but in the event of a close call, we

should not reverse because we might have decided the issue differently. *See Downer v. Aquamarine, Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985); *Wagner*, 627 S.W.3d at 283; *Labatt Food Serv.*, 279 S.W.3d at 642-43; *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019). A party seeking to compel arbitration must first establish that a valid arbitration agreement exists and that the claims are within the agreement's scope. *See Wagner*, 627 S.W.3d at 282; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). While there is a strong presumption favoring arbitration, that presumption only arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson*, 128 S.W.3d at 227. Ordinary principles of state contract law determine whether a valid agreement to arbitrate exists. *Kellogg Brown & Root*, 166 S.W.3d at 738. When applicable, the party seeking arbitration must also establish that the arbitration agreement binds a nonsignatory. *Taylor Morrison of Tex., Inc. v. Kohlmeyer*, 634 S.W.3d 297, 304 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (opin. on rehearing). After the proponent of arbitration has made the required showings, the burden then shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014).

Generally, "parties must sign arbitration agreements before being bound by them." *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding) (citation omitted). "Texas law has long recognized that nonparties may be bound to a contract under various legal principles." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) (citations omitted). A nonsignatory can be bound to an arbitration agreement under the doctrine of direct benefits estoppel in two instances. *Kellogg Brown & Root*, 166 S.W.3d at 739. First, a nonsignatory of a contract containing an arbitration provision may be compelled to arbitrate his claims that are based on the terms of the contract, because a nonsignatory cannot seek to enforce some provisions of the contract to his benefit and argue that the arbitration provision does not apply. *Id.* However, if a nonsignatory's claims can stand independently of the underlying contract, then generally, arbitration should not be compelled under the doctrine of direct benefits estoppel. *Id.* at 739-40. The second way that direct benefits estoppel may bind a nonsignatory to an arbitration agreement is where the nonsignatory seeks or obtains direct benefits from a contract by means other than a lawsuit. *Weekley Homes*, 180 S.W.3d at 132. In the second instance, a nonsignatory may be compelled to arbitrate if he "deliberately seeks and obtains substantial benefits" from the contract containing the arbitration provision. *Id.* at 132-33.

DRH maintains that the Hernandezes' claims arise from the representations and warranties initially given to Hudnall and can only arise from the Hudnall-DRH

11

Contract. In determining whether a claim seeks a direct benefit from a contract containing an arbitration provision we look at the substance of the claim to see if liability arises solely from the contract or must be determined by reference to it. *Id.* at 131-32. It is not enough that the nonsignatory's claim relates to the contract; rather, the nonsignatory must seek benefits that stem directly from the contract's terms and the claim must be unable to stand independently without the contract. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527-28 (Tex. 2015); *Kellogg Brown & Root*, 166 S.W.3d at 739-41; *Kohlmeyer*, 634 S.W.3d at 306. Arbitration should not be compelled if a nonsignatory's claims can stand independently of the contract. *Cardon Healthcare Network, Inc. v. Goldberg*, No. 03-17-00474-CV, 2018 WL 1124500, at *4-5 (Tex. App.—Austin Mar. 2, 2018, no pet.) (mem. op.).

The record shows that DRH filed Special Exceptions to Plaintiffs' Original Petition, Supplement to Petition, and First Amended Petition, and the trial court granted DRH's special exceptions and ordered the Hernandezes to amend their petition. In their live pleading, the Hernandezes did not assert a breach of contract claim and they alleged that the source of their claims was the RWC Limited Warranty and implied warranties created by Texas law. The Hernandezes' claims for violations of the DTPA, fraudulent inducement, fraud by nondisclosure, breach of warranty, negligence, and conspiracy are based on their allegations that the home

12

has construction defects that cause increased moisture and mold growth due to DRH's failure to follow minimum Texas Building Code standards for ventilation systems, roofing, and foundation systems. The Hernandezes did not allege that DRH breached any provision of the Hudnall-DRH Contract or that the home was not built in accordance with the Hudnall-DRH Contract, nor did the Hernandezes seek to enforce any terms of the Hudnall-DRH Contract or allege liability that arises solely from the contract or must be determined by reference to it. *See Weekley Homes*, 180 S.W.3d at 131-32. Instead, the Hernandezes' claims allege liability arising from the RWC Limited Warranty, general obligations imposed by law, and relevant statutes such as the DTPA, which can stand independently without the Hudnall-DRH Contract. *See G.T. Leach Builders*, 458 S.W.3d at 527; *Kellogg Brown & Root*, 166 S.W.3d at 739-41; *Kohlmeyer*, 634 S.W.3d at 306-07; *Goldberg*, 2018 WL 1124500, at *4-5; *D.R. Horton-Emerald, Ltd. v. Mitchell*, No. 01-17-00426-CV, 2018 WL 542403, at *6-7 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (mem. op.).

Again, it should be noted that the only Exhibits filed with DRH's Motion to Abate and Compel Arbitration were the affidavit of Holly James, the Hudnall-DRH Contract, the General Warranty Deed between DRH and Hudnall, and the Warranty Deed with Vendor's Lien between Hudnall and the Hernandezes. Therefore, the only documentary evidence that DRH can rely upon for its position is the Hudnall-DRH Contract, because the other exhibits do not reference any warranties or arbitration.

13

The only parties identified in the Hudnall-DRH Contract are DRH as the Seller and Hudnall as the Buyer, and the Hudnall-DRH Contract set forth that the Buyer was provided with a "Sample Limited Warranty" administered by RWC and included a provision that requires all disputes that arise under the Limited Warranty to be submitted to binding arbitration. The Hudnall-DRH Contract provides that "THIS CONTRACT constitutes the entire agreement between the parties," and anything else not expressly set forth therein has no force and effect and is not part of the contract. The Hudnall-DRH Contract further provides that the "SELLER'S SOLE WARRANTY TO PURCHASER IS THE LIMITED HOME WARRANTY DESCRIBED IN PARAGRAPH 14 OF THIS CONTRACT." However, a review of paragraph 14 shows that it makes absolutely no reference to a limited home warranty. More specifically, the first paragraph of paragraph 14 requires the builder to hold a certificate with the TRCC, the second paragraph provides the buyer with the phone number of the commission to inquire about the builder, and the third and last paragraph references Chapter 426 of the Property Code and how to proceed under the "STATE-SPONSORED INSPECTION AND DISPUTE RESOLUTION PROCESS[]" with a complaint concerning a construction defect. Therefore, based on our review of the record, DRH failed to produce any documents that include a DRH Sample Limited Warranty, DRH's ten-year construction warranty, DRH's

14

Warranty Booklet, the RWC Limited Warranty, the Addendum to the RWC Limited Warranty, or any similar DRH warranty for the trial court's consideration.

Again, DRH relies upon the application of direct benefits estoppel. Although the Hernandezes' Third Amended Petition repeatedly references the Hudnall-DRH Contract and the warranties that DRH conveyed to Hudnall, the Hernandezes' pleaded causes of action that stand independently of the Hudnall-DRH Contract, because they arise from the RWC Limited Warranty and general obligations imposed by state law, including statutes, torts, and other common law duties rather than the Hudnall-DRH Contract. *See G.T. Leach Builders*, 458 S.W.3d at 527-28. Importantly, the Hudnall-DRH Contract does not contain language stating that the RWC Limited Warranty was incorporated by reference into the Hudnall-DRH Contract, and the TRCC Addendum to RWC Limited Warranty provided in the record specifically states that it "is separate and apart from your contract and or other sales agreements with your Builder."

More specifically, we now turn to the specific language of the Hernandezes' Exhibit 3, which is entitled: "Residential Warranty Corporation presents The TRCC Addendum to the Limited Warranty 10 Year Warranty for New Homes[.]" RWC is the Administrator of this TRCC Addendum to the Limited Warranty. "The Purchaser includes the first buyer of the warranted Home and any and all subsequent Owners

15

who take within the warranty period." As set forth under Section IV of the TRCC Addendum to the Limited Warranty, the conditions for resolving disputes include:

1. This TRCC Addendum provides coverage only in excess of coverage provided by other warranties or insurance, including, but not limited to, the RWC Limited Warranty #319.
2. This TRCC Addendum is binding on the Builder and you and your heirs, executors, administrators, successors and assigns.
3. This TRCC Addendum is separate and apart from your contract and/or other sales agreements with your Builder. It cannot be affected, altered or amended in any way by any other agreement which you may have.
4. This TRCC Addendum cannot be modified, altered or amended in any way except by a formal written instrument signed by you, your Builder and the Administrator.

DRH has likewise never produced any "RWC Limited Warranty #319." More importantly, the TRCC Addendum to the Limited Warranty, which is the only warranty produced in the record, is separate and apart from the Hudnall-DRH Contract relied upon by DRH in its claim for binding arbitration. Therefore, the trial court could have reasonably determined that DRH failed to meet its burden to establish that a valid arbitration agreement exists that binds the Hernandezes. *See Kellogg Brown & Root*, 166 S.W.3d at 737.

The evidence shows that the TRCC Addendum to the Limited Warranty and the Hudnall-DRH Contract are separate and independent instruments. *See D.R. Horton-Emerald*, 2018 WL 542403, at *8. While paragraph 15 of the Hudnall-DRH Contract discusses certain aspects of the RWC Limited Warranty and states that the warranty is provided "IN LIEU OF ALL OTHER WARRANTIES," it is clear that

16

the TRCC Addendum to the Limited Warranty is a separate document with its own terms and provisions apart from the Hudnall-DRH Contract. Additionally, the TRCC Addendum to the Limited Warranty, as a separate instrument, automatically transferred to the Hernandezes when they purchased the home, and it is the TRCC Addendum to the Limited Warranty that defines the warranty's coverage and not the Hudnall-DRH Contract. The TRCC Addendum to the Limited Warranty provides that warranty disputes may be resolved by the parties and that a party may perform actions pursuant to the TRCC Addendum to the Limited Warranty which may include the cost to repair or replace any covered item. The TRCC Addendum to the Limited Warranty further provides that in the event that a homeowner and builder cannot agree on the presence of a construction defect or its proper resolution, the TRCC has a State-Sponsored Inspection and Dispute Resolution procedure.

Accordingly, since DRH failed to meet its burden to establish that a valid arbitration agreement exists that binds the Hernandezes, the trial court did not abuse its discretion by denying DRH's motion to compel. *See Labatt Food Serv.*, 279 S.W.3d at 642-43; *Kellogg Brown & Root*, 166 S.W.3d at 737, 739; *Kohlmeyer*, 634 S.W.3d at 305-06; *D.R. Horton-Emerald*, 2018 WL 542403, at *7-8. Since DRH failed to meet its burden, we need not consider DRH's first issue that the doctrine of direct benefits estoppel requires the Hernandezes to arbitrate all their claims against DRH. We overrule issue one. Likewise, since DRH failed to meet its burden, we

17

need not consider DRH's second issue complaining that the Hernandezes failed to establish a valid defense to arbitration. *See* Tex. R. App. P. 47.1; *Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014); *Kellogg Brown & Root*, 166 S.W.3d at 737. We overrule issue two. Therefore, we affirm the trial court's order denying the motion to compel arbitration.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on April 28, 2021
Opinion Delivered January 13, 2022

Before Golemon, C.J., Horton and Johnson, JJ.